# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

IN RE:                                    )
                                          )        Chapter 7
YVONNE C. VENTURA,                        )
                                          )        Bankruptcy No. 15-00224
        Debtor.                           )

## RULING ON MOTION TO DEFINE COMPROMISED CLAIMS AND OBJECTION TO DEBTOR'S CLAIM OF EXEMPTIONS

Two related matters are before the Court.  First, a Motion to Define Compromised Claims came before the Court for hearing on September 20, 2017 in Cedar Rapids, Iowa.  Kevin Arhenholtz appeared for Debtor Yvonne Ventura ("Debtor").  Casey Rigdon appeared for the Roberto G. Gonzales Estate ("the Gonzales Estate").  Jared Knight appeared for Chapter 7 Trustee Sheryl Schnittjer ("Trustee").  The Court received evidence, heard argument, and took the matter under advisement.

The second matter is Trustee's Objection to Debtor's Claim of Exemptions, which came before the Court for telephonic hearing on December 12, 2017.  Kevin Arhenholtz appeared for Debtor, Casey Rigdon appeared for the Gonzales Estate, and Eric Lam appeared for Trustee.  The Court received evidence, heard argument, and took the matter under advisement.  These are core proceedings under 28 U.S.C. § 157(b)(2).

## STATEMENT OF THE CASE

Debtor was in a long-term relationship with Roberto Gonzales.  Debtor filed her bankruptcy.  After Debtor's bankruptcy closed, Mr. Gonzales died intestate. Debtor filed probate claims against Mr. Gonzales' estate asserting she was his common-law spouse.   This dispute is about whether Debtor's claims against the Gonzales' estate are or were property of the bankruptcy estate.  Debtor argues that her claims arose when Mr. Gonzales died, after her bankruptcy and thus were not property of the bankruptcy estate.  The Gonzales Estate argues that Debtor's probate claims existed as contingent claims when she filed bankruptcy, before Mr. Gonzales died, and therefore were property of the bankruptcy estate.

## BACKGROUND AND FACTS

The facts are not in dispute.  Debtor was in a long-term relationship with Roberto Gonzales.  Debtor alleges that she and Mr. Gonzales shared a common-law marriage from November 27, 2002 to his death in December 2015.

Debtor filed this bankruptcy on February 27, 2015.  On April 30, 2015, Trustee filed a report of no distribution.  On June 18, 2015, Debtor received a discharge and the case was closed.

Mr. Gonzales died without a will in December 2015.  On July 22, 2016, Debtor filed claims against the Gonzales Probate Estate.  In her Notice and Claim of Surviving Spouse, Debtor "requests distribution to her the share afforded to her

2

as the surviving spouse pursuant to the intestacy laws of the State of Iowa."  In

particular, she asked for "such amount as the Court deems reasonable for the

proper support of a surviving spouse for a period of twelve months following the

Decedent's death."  She also asked for the estate to pay her "such amount as is

justly due to her under the intestacy laws of the State of Iowa as the Decedent's

surviving spouse."

Debtor also filed a claim.  She claims $39,511.58 plus interest "for

reimbursement to her of payment of purchase money, cost and value of

improvements made, and payments real estate taxes and other expenses associated

with the [home] . . . ."  She also claims "fair and reasonable compensation for the

value of [her] labor and time invested in maintaining, repairing and improving the

[home] . . . ."  Her claim states that it "is contingent upon result of [her] claim she

is Decedent's surviving spouse and entitled to her spousal intestate share of the

assets of Decedent's estate, including the value asserted in this Claim."  She further

states that her claim "inheres to the [home]."  In neither of these two filings with

the probate court (the only documents in the record that set out her probate claims)

does she say what specific statutes she relies on for these claims.  Debtor simply

claims her "spousal share" according to Iowa intestacy law and reimbursement for

her contribution to the home.

3

On January 5, 2017, the United States Trustee ("the UST") filed a Motion to Reopen the bankruptcy case.  The UST noted that Debtor had recently filed her Notice and Claim of Surviving Spouse in the Gonzales probate estate claiming a spousal ownership interest in a house.  The UST points out that Debtor did not list an ownership interest in real estate on her bankruptcy schedules and did not claim to be married.  The UST asked the Court to reopen the case to allow further investigation of this matter.  The Court granted the motion.

On January 30, 2017, shortly after the UST's Motion to Reopen to investigate, the Chapter 7 Trustee filed a Motion to Approve Compromise or Settlement.  Under the proposed settlement, the Gonzales Estate would pay $13,000 to the Chapter 7 Trustee for whatever claims the Chapter 7 Trustee had against the Gonzales Estate.  The Chapter 7 Trustee noted in her Motion to Approve that Debtor had filed a claim in the Gonzales Probate Estate alleging that she was his common-law spouse and claiming an interest in the probate estate assets, but had not listed such interest on her bankruptcy schedules.  Trustee further noted that, if Debtor had an interest in the house when she filed bankruptcy, it became property of the estate when she filed and continued to be property of the estate because she never listed it.  The Chapter 7 Trustee implied, but never stated, that the bankruptcy estate possessed the Debtor's claims against the Gonzales estate.  No one objected to the proposed settlement.  On February 23, 2017, the

4

Court approved the settlement of the Chapter 7 Trustee's claims against the

Gonzales estate.

On May 9, 2017, the Iowa District Court for Linn County entered an order in

the probate proceeding related to this settlement.  The Iowa District Court noted

that this Court had approved the settlement but that the settlement did not state

what claims Trustee and the Gonzales Estate actually settled:

> [T]he order granting the motion [to approve compromise or settlement]
> and the motion itself are not crystal clear as to precisely what has been
> compromised.  The Court reads both as providing that any claims of
> Ms. Ventura, as defined by bankruptcy law, that existed when she filed
> her bankruptcy case have been settled in exchange for payment by this
> estate in the amount of $13,000.

In re Estate of Gonzales, No. 06571 ESPR038964, at 1 (Iowa Dist. Ct. Linn

Cnty. May 9, 2017).  The Iowa District Court then found that, although it

was not authorized to determine what claims have or have not been settled

(that is, what claims were or were not a part of the bankruptcy estate), the

settlement was in the best interest of the estate.  Id.  The Court approved the

settlement, noting: "[A]ny claims that were a part of the bankruptcy estate

are resolved." Id. at 2.  The Court reiterated that it was not addressing what

substantive claims were settled:

> The bankruptcy court approved the compromise but did not rule on
> what claims it might include.  This court is NOT addressing specifically
> what claims are resolved as part of the compromise.  This ruling is
> premised only on the conclusion that any claims that were part of the
> bankruptcy estate, that is they existed when Ms. Ventura filed

5

bankruptcy, are resolved as part of the compromise.  Any claims that would not be considered part of the bankruptcy estate are not compromised because the Trustee has no standing to compromise such claims.

Id.

On May 25, 2017, the Gonzales Estate filed the Motion to Define Compromised Claims presently before this Court.  In the Motion, the Gonzales Estate asks this Court to decide "precisely what has been compromised."  That is, the Gonzales Estate is effectively asking what claims Debtor had against Mr. Gonzales' property, if any, when she filed bankruptcy.  The Gonzales Estate argues that all of Debtor's probate claims arose prepetition, became part of the bankruptcy estate when she filed, and were settled in full by the Gonzales Estate with the Chapter 7 Trustee.  The Chapter 7 Trustee supports the motion and arguments of the Gonzales Estate.  Debtor resists.  Debtor asks the Court to find that all of her probate claims against the Gonzales Estate arose postpeition.  She claims that her status as a probate claimant arose only when Gonzales died without a will providing for her common law spousal interests.

On September 21, 2017, after the hearing on the Motion to Define Compromised Claims, Debtor amended her schedules.  She lists: "Any and all matured or unmatured claims to real estate, know or unknown, legal or equitable" as exempt.  Debtor listed the value and portion of this exempt property as unknown.

6

Trustee filed an objection to Debtor's exemption.  Trustee argues that

Debtor's exemption was inappropriate, untimely, and should be denied.  Trustee

argues that she had already sold the property interest that Debtor now claims as

exempt and distributed the proceeds.  Thus, she argues that it is now impossible for

Debtor to exempt the property from the estate.

## CONCLUSIONS OF LAW AND ANALYSIS

The first issue here is whether the claims that Debtor now asserts in probate

existed when she filed bankruptcy and became property of the estate.  The second

issue is whether the settlement between Trustee and the Gonzales Estate already

decided that issue.

## I.    Property of the Estate—When Did Debtor's Probate Claims Arise?

The key question is whether Debtor's probate claims (as common law

spouse with a property interest) became part of her bankruptcy estate when she

filed bankruptcy.  More specifically, the Court must decide whether Debtor's

spousal and equitable interest claims she asserts against Gonzales' probate estate

were "legal or equitable interest of the debtor in property as of commencement of

the case."  11 U.S.C. § 541.  In deciding this issue, the Court addresses only

whether Debtor's claims arose prepetition and became property of the bankruptcy

estate—not the actual merits of the probate claims she asserts.

7

The Gonzales Estate argues that Debtor's probate claims arose in 2002, when Debtor claims she and Mr. Gonzales allegedly began their common law marriage relationship.  The Gonzales Estate argues that Debtor's probate claims existed as contingent claims, and came into the bankruptcy estate, when she filed bankruptcy on February 20, 2015.  The Gonzales Estate concludes that Debtors' probate claims that arose from her alleged common-law marriage to Gonzales became part of the bankruptcy estate, and remained in the bankruptcy estate until Trustee settled those claims with the Gonzales Estate earlier this year.

Debtor argues that her probate claim arose postpetition, when Mr. Gonzales died.  She asserts that her status as a probate claimant arose only after she discovered that Mr. Gonzales died without a will providing for her.  Debtor argues that she did not need to list the potential claims on her bankruptcy schedules because they were too speculative and without any value at that time.

### A. Debtor's Dower Interest

In the probate case, Debtor makes claims against the Gonzales Estate for "her share afforded to her as the surviving spouse pursuant to the intestacy laws of the State of Iowa."  This interest is generally referred to as the "dower interest." Debtor emphasizes that any dower interest that existed when she filed bankruptcy was speculative and did not vest until Mr. Gonzales died post-petition.  Debtor notes that, if Mr. Gonzales had died with a will that equitably provided for Debtor

8

and her financial contributions, she would not have a probate claim.  Debtor thus

concludes that all of her probate claims arose postpetition when Mr. Gonzales died

without a will providing for her interest.

The threshold question here is whether the probate claims became property

of the bankruptcy estate under 11 U.S.C. § 541 when Debtor filed bankruptcy in

February 2015.  Section 541 provides:

> **The commencement of a case** under  . . . this title **creates an estate.
> Such estate is comprised of** all the following property, wherever
> located and by whomever held:
>
> (1) . . . **all legal or equitable interests of the debtor in property as of
> the commencement of the case** . . . .

11 U.S.C. § 541 (emphasis added).  Here, Iowa law determines what constitutes

Debtor's "legal and equitable interest" "as of the commencement of the case."  In

re Vratsinas, Bankr. No. 13-01085, 2013 WL 6628551, at *2 (Bankr. N.D. Iowa

Dec. 17, 2013) (citing Butner v. United States, 440 U.S. 48, 55 (1979)) ("State

laws define property rights.")).  As noted in the facts, Debtor's filings with the

probate court do not set out what specific statutes she relies on.  Debtor instead

simply claims her "spousal share" according to Iowa intestacy law and related

equitable reimbursement for her contribution to the home.

The Iowa Probate Code controls and defines these interests and provides:

> Except as otherwise provided in this probate code, when a person dies,
> the title to the person's property, real and personal, passes to the person
> to whom it is devised by the person's last will, or, in the absence of

9

such disposition, to the persons who succeed to the estate as provided in this probate code . . . .

Iowa Code § 633.350. Here, it is undisputed that Mr. Gonzales died intestate. As a result, his property "passes . . . to the persons who succeeded to the estate as provided in" the Iowa probate code. Id. The Iowa Probate Code provides: "The estate of a person dying intestate shall descend as provided in sections 633.211 to 633.226." Iowa Code § 633.210.

With respect to surviving spouses, which Debtor now claims she is (as a common law spouse), the Iowa Probate Code provides:

> If the decedent dies intestate leaving a surviving spouse and leaving no issue or leaving issue all of whom are the issue of the surviving spouse, the surviving spouse shall receive the following share:
>
> 1. All the value of all the legal or equitable estates in real property possessed by the decedent at any time during the marriage, which have not been sold on execution or by other judicial sale, and to which the surviving spouse has made no relinquishment of right.
>
> 2. All personal property that, at the time of death, was, in the hands of the decedent as the head of a family, exempt from execution.
>
> 3. All other personal property of the decedent which is not necessary for the payment of debts and charges.

Iowa Code § 633.211. The next section of the probate code similarly states:

> If the decedent dies intestate leaving a surviving spouse and leaving issue some of whom are not the issue of the surviving spouse, the surviving spouse shall receive the following share:
>
> 1. One-half in value of all the legal or equitable estates in real property possessed by the decedent at any time during the marriage, which

10

have not been sold on execution or by other judicial sale, and to which the surviving spouse has made no relinquishment of right.

2. All personal property that, at the time of death, was in the hands of the decedent as the head of a family, exempt from execution.

3. One-half of all other personal property of the decedent which is not necessary for the payment of debts and charges.

4. If the property received by the surviving spouse under subsections 1, 2 and 3 of this section is not equal in value to the sum of fifty thousand dollars, then so much additional of any remaining homestead interest and of the remaining real and personal property of the decedent that is subject to payment of debts and charges against the decedent's estate, after payment of the debts and charges, even to the extent of the whole of the net estate, as necessary to make the amount of fifty thousand dollars.

Iowa Code § 633.212.

These statutes are a "codification of the long-held general rule of the wife's inchoate right in land of which her husband may be seised at any time during the existence of their marriage relation." United States v. Schippers, 982 F. Supp. 2d 948, 961 (S.D. Iowa 2013) (internal quotation marks omitted) (quoting MetaBank v. Estate of Boesen, 810 N.W.2d 532 (Iowa Ct. App. 2012)); see also Freedom Fin. Bank v. Estate of Boesen, 805 N.W.2d 802, 815 (Iowa 2011) ("Section 633.211 specifically governs an intestate surviving spouse's statutory dower share."). This statutory share is called a "dower" interest.[1] Schippers, 982 F. Supp. 2d at 961.

---

[1] "[A]t common law, [dower was] 'a wife's right upon her husband's death, to a life estate in one-third of the land that he owned in fee.'" Schippers, 982 F. Supp. 2d at 960 (quoting Black's Law Dictionary 565 (9th ed. 2009)). "[D]ower, in the

In applying these statutes, the Iowa Supreme Court has said: "A spouse's statutory dower interest attaches to real property 'the instant there is a concurrence of seisin in the husband and marriage relation between the parties.'" Freedom Fin. Bank, 805 N.W.2d at 807 (quoting Lucas v. White, 120 Iowa 735, 741, 95 N.W. 209, 211 (1903)). Once this interest attaches, "a decedent cannot unilaterally divest a surviving spouse of their vested statutory dower interest." Id. As a result, where "a husband conveyed property to a third party without his wife's knowledge" that conveyance did not divest her of her dower interest:

> The dower right, given by statute to a wife in the property of her husband, though inchoate pending the life of the husband, is in the nature of a property right, and she cannot be divested of it by any act of her husband, whether done in good faith, or in fraud.

Id. (quoting Warner v. Trs. of Norwegian Cemetery Ass'n, 139 Iowa 115, 117, 117 N.W. 39, 42 (1908)). Likewise, "a wife's statutory dower interest takes priority over leasehold interests conveyed by her husband without her approval." Id. (citing Westergard v. Klepper, 229 N.W.2d 236, 239 (Iowa 1975)). These cases show that, although inchoate, the statutory dower interest is "in the nature of a property right" that attaches "attaches at seisin and marriage." Id. at 812; see also Buzick v. Buzick, 44 Iowa 259, 262 (1876) ("Although the wife's dower during

---

original common law sense, has been abolished in Iowa, but we continue in practice to use the word as meaning the right to the statutory distributive share which the surviving spouse receives." Id. (internal quotation marks omitted) (quoting In re Dluhos' Estate, 246 Iowa 1043, 70 N.W.2d 549, 553 (1955)).

12

the lifetime of her husband is inchoate and uncertain, yet it possesses the elements of property."). Nevertheless, although it has attached, the dower interest remains inchoate until the spouse dies. United States v. Schippers, 982 F. Supp. 2d 948, 961 (S.D. Iowa 2013) (collecting cases noting that the statutory dower right is "inchoate pending the life of the husband").

This Court joins those courts that have noted that there is "some difficulty in determining whether a contingent right such as dower should cause real property to be included as property of the estate." United States v. Chalmers (In re Wheeler), 252 B.R. 420, 426 (W.D. Mich. 2000) (noting the question but not deciding it). The issue must be decided here. Iowa law provides that, while the spouse is alive, a statutory dower share is an inchoate, contingent interest but is nonetheless a property right that attaches during the spouse's life. The nature of the statutory dower interest as a property right under Iowa law compels the Court to find that it became property of the estate.

To be clear, the dower interest is not an inheritance or expectancy interest. The Iowa Supreme Court, in applying a previous dower statute that is "remarkably similar" to the present statute, Freedom Fin. Bank, 805 N.W.2d at 813, found that: "The law is well settled in this state that the distributive share which the widow takes . . . goes to her as a matter of contract and of right, and not by inheritance." In re Kuhn's Estate, 125 Iowa 449, 101 N.W. 151, 152 (1904). This is consistent

with reasoning provided by other bankruptcy courts that noted, "unlike a mere expectancy interest, a contingent interest in property confers upon its holder a true interest in that item of property. . . . no matter how improbable the contingency." In re Greer, 242 B.R. 389, 399 (Bankr. N.D. Ohio 1999).  This Court adopts this reasoning and finds that Debtor here had a contingent claim based on an inchoate dower interest that became a part of the bankruptcy estate when she filed.

In so finding, this Court follows bankruptcy courts in Ohio and Arkansas, which have found under applicable state law that: "When an individual with a contingent dower interest in property files a bankruptcy case, that interest becomes property of the bankruptcy estate."  In re Rosario, 402 B.R. 223, 227 (Bankr. N.D. Ohio 2009); In re Rudicil, 343 B.R. 181, 184 (Bankr. S.D. Ohio 2006) ("It is undisputed that a debtor's inchoate dower interest as determined under Ohio law becomes property of the bankruptcy estate."); see also In re Flippin, 334 B.R. 434, 436 (Bankr. W.D. Ark. 2005) ("[T]he debtor's inchoate dower interest is property of the estate.").  These cases are persuasive authority supporting the Court's conclusion that the dower interest became property of the estate in February 2015.

A dower interest, however, is not transferrable: "the wife of the grantor relinquished her inchoate right of dower . . . but did not (and could not) convey such inchoate right . . . . The wife had no estate that she could grant or convey." Louisa Cty. v. Grimm, 203 Iowa 23, 212 N.W. 324, 325 (1927); see also Peddicord

14

v. Peddicord, 242 Iowa 555, 562, 47 N.W.2d 264, 268 (1951) ("She has . . . no

estate in the land which she can convey . . . ."); Dunlap v. Thomas, 69 Iowa 358,

28 N.W. 637, 638–39 (1886) ("The doctrine that they cannot sell or convey their

dower interest while it remains inchoate as an independent interest rests upon the

peculiar nature of the right . . . .").  Thus, when Debtor filed her bankruptcy

petition the dower interest did technically become property of the estate, but it was

impossible to transfer that interest to Trustee—and so it was also impossible for

Trustee to "use, sell, or lease" the interest.  11 U.S.C. § 542(a).  In other words,

this is the strange case where the interest is technically property of the estate under

§ 541, but it cannot be turned over under § 542, or sold by the trustee under § 363

or any other provision.

A bankruptcy court in Arkansas dealt with a similar issue under similar legal

concepts in Arkansas law, and reached a similar conclusion.  In re Flippin, 334

B.R. at 436 ("Under Arkansas law, a spouse cannot convey her dower rights to any

one; she can only relinquish those rights.").  As a result, when presented with a

trustee's motion for turnover of a dower interest, the bankruptcy court found that,

although "the debtor's inchoate dower interest in her husband's property is

property of the debtor's estate" the Court still had to determine "whether the

interest is capable of being turned over to the trustee."  Id. at 436–37.  The Court

analyzed the turnover issue as follows:

15

> Dower rights vest upon the death of the dower holder's spouse. Until that time, the right of dower is "'a mere intangible, inchoate, contingent expectancy.'" Under Arkansas law, a spouse cannot convey her dower rights to any one; she can only relinquish those rights, and then only to her husband's grantee or one claiming title under him. Although the right of dower may be a valuable contingent right, "it is not such an interest in her husband's property as may be conveyed by her." Because of this limitation on transfer, the debtor in this case is incapable of taking any action to effectuate the turnover of her dower interest to the trustee. In these circumstances, the interest is simply not transferable, and is not one the trustee can "use, sell, or lease under section 363 of this title . . . ." 11 U.S.C. § 542(a).

Id. (citations omitted).

The Court finds this case provides additional persuasive guidance on how to treat Debtor's dower interest and the question raised here. That interest was not transferred to Trustee during her bankruptcy—even though it was property of the estate. The dower interest is not something that Trustee could "use, sell, or lease under section 363 of this title." 11 U.S.C. § 542(a). In February 2015, when it technically became property of the estate, it had no real value to the estate. Moreover, the right at issue did not fully vest or become valuable to the bankruptcy estate within 180 days of filing, which could make it arguably subject to § 541(a)(5). In fact, it never became a right with any value or potential salability until after the bankruptcy case closed.

Given this conclusion, Trustee could not settle Debtor's dower claims during the original period the bankruptcy was pending because Trustee had no interest in Debtor's dower right that she could sell or any value she could attach to it.

16

Debtor's dower interest—to the extent it was technically part of her bankruptcy

estate—practically and effectively remained her own inchoate interest unaffected

by the bankruptcy in any real way.  Only when Gonzales died, postpetition and

after the bankruptcy case closed, did that interest take on potential value.

The Chapter 7 Trustee and the Gonzales Estate argue that the Chapter 7

Trustee would be entitled to that value—arising postpetition—because any

property interest not scheduled in Debtor's bankruptcy papers remains in the estate

after the close of a case.  11 U.S.C. § 554(d).  Chapter 7 Trustee and the Gonzales

Estate essentially argue that Debtor's inchoate dower interest remained in the

bankruptcy estate, vested in the bankruptcy estate and took on value when Mr.

Gonzales died, and was then an interest the Chapter 7 Trustee could sell or convey.

This argument misses the importance of a key fact here.  It is undisputed

that, if Debtor had in fact listed her dower interest on her schedules or considered it

part of the bankruptcy estate when the case was filed, that interest would have

remained with Debtor throughout the case, because it could not be transferred and

had no value.  Thus, it would have been abandoned back to Debtor specifically by

the Trustee or by operation of law when the case originally closed.  11 U.S.C.

§ 554.  Thus, to the extent that the Chapter 7 Trustee and Gonzales Estate are

correct that the Dower interest technically became property of the estate on filing,

it would also technically have departed the case upon closing.  The fact that the

17

Chapter 7 Trustee did not actually abandon the property (which surely she would

have if Debtor had listed it) does not control the outcome.

The relevant portion of the statute governing abandonment states:

(c) **Unless the court orders otherwise**, **any property scheduled**
under section 521(a)(1) of this title **not otherwise administered** at the
time of the closing of a case **is abandoned to the debtor** and
administered for purposes of section 350 of this title.

(d) **Unless the court orders otherwise**, property of the estate that is
not abandoned under this section and that is not administered in the case
remains property of the estate.

11 U.S.C. § 554 (emphasis added).  Debtor prevails here under either section.

Under subsection (c), if Debtor had scheduled the property (as the Chapter 7

Trustee and the Gonzales estate insist was required) it would have been abandoned

back to Debtor because it was not capable of administration.  Under subsection (d),

the non-listed asset would remain in the estate, "unless the Court orders

otherwise."  Here, at a minimum, the Court will "order otherwise" because that

effects the result that would have occurred if Debtor had listed the property.

"The phrase 'unless the court orders otherwise' appears throughout the

Bankruptcy Code.  In interpreting those statutes, courts have held that the phrase

'unless the court orders otherwise' grants a bankruptcy court discretion." In re

Shultz, 509 B.R. 190, 202 (Bankr. N.D. Ind. 2014) (citations omitted).  In the

context of § 554, many cases address a bankruptcy court's power to revoke a

technical abandonment under subsection (c).  In re DeGroot, 484 B.R. 311, 320–21

18

(B.A.P. 6th Cir. 2012) (collecting cases).  A bankruptcy court's power to "order

otherwise" under § 554, however, is not limited to revoking a technical

abandonment under § 554(c).  Id.  The Court may also order that property be

"deemed abandoned" under § 554(d):

> [T]he court has ample cause and clear statutory authority under 11
> U.S.C. § 554(d) to address the problem by ordering that,
> notwithstanding the Trustee's technically correct argument against
> deemed abandonment under 11 U.S.C. § 544(c) and (d), the Receivable
> will be deemed abandoned and no longer property of the estate pursuant
> to this court's order.

In re DeGroot, 460 B.R. 159, 171–72 (Bankr. W.D. Mich. 2011), aff'd, 484 B.R.

311 (B.A.P. 6th Cir. 2012).  In other words, "the bankruptcy court has the

discretion to determine whether to order abandonment."  In re Wright, 566 B.R.

457, 463 (B.A.P. 6th Cir. 2017).

Here, even if the dower claim technically remained in the bankruptcy estate

when Mr. Gonzales died, and could be viewed as becoming a valuable asset that

Trustee could possess and convey at that time, the Court orders that the claim is

deemed abandoned back to debtor under its authority to "order otherwise" under

§ 554(d).  This result comports with the reality that, had Debtor scheduled the

interest, it would have remained with her and been abandoned at the close of her

case, because she would have been unable to convey it to Trustee.

This result would not "reward the Debtor for failing to schedule" her

inchoate dower interest.  In re DeGroot, 460 B.R. at 172.  If Debtor had listed the

19

inchoate right in her original filing, this issue would not exist.  Trustee would be

making no claim to anything.  This is not a case where Debtor intentionally kept

property from the estate for her benefit.  Debtor gets no reward for failing to list

it—in fact, Debtor has instead incurred additional and unnecessary legal

proceedings and stress because of failing to list it.  In sum, the Court finds cause to

order that the dower interest was, at a minimum, deemed abandoned as of the close

of the case under 11 U.S.C. § 554.

To answer the question raised by the Gonzales Estate, the settlement

between the Gonzales Estate and the Chapter 7 Trustee did not affect any claim

Debtor had or has to a dower interest.

## B. Debtor's Reimbursement and Compensation Claims

In addition to her dower claim, Debtor claims $39,511.58 plus interest "for

reimbursement to her of payment of purchase money, cost and value of

improvements made, and payments real estate taxes and other expenses associated

with the [home]" and "fair and reasonable compensation for the value of [her]

labor and time invested in maintaining, repairing and improving the [home]."  This

is similar to another Iowa case where, like here, an alleged surviving spouse filed a

claim in probate "electing to take 'her intestate share' of the decedent's property"

and also filed "a claim in probate seeking $40,000 as 'reimbursement for her joint

survivor ownership interest in assets of the estate as well as a lien for

improvements made to the estate during the marriage and/or cohabitation of the

parties.'" In re Estate of Waterman, 798 N.W.2d 736, 2011 WL 768753 at *2

(Iowa Ct. App. 2011). In that case, the trial court found that the claimant was the

decedent's common law spouse taking her intestate share of property but "denied

her $40,000 claim in probate." Id. at *3. Thus, the probate claim Debtor has made

is in two distinct parts—the "dower" portion and the reimbursement portion.

Because the Court has addressed the "dower" claim, it will also address whether

Debtor's reimbursement and compensation claims became property of the

bankruptcy estate when Debtor filed bankruptcy in February 2015.

> Section 541 provides:
>
> The commencement of a case under . . . this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> (1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541 (emphasis added). As previously noted, Debtor's filings do not

set out what specific statutes or doctrines she relies on—Debtor simply claims

$39,511.58 plus interest "for reimbursement to her of payment" and "fair and

reasonable compensation for the value of [her] labor." From these pleadings,

Debtor's reimbursement and compensation claims sound in quasi contract law as

unjust enrichment claims. In re Estate of Atkinson, No. 9-209, 1999 WL 823564,

at *1 (Iowa Ct. App. Oct. 15, 1999) (analyzing similar claims for contribution to

home and maintenance of the real estate claims as unjust enrichment and

reimbursement claims).  "Legal causes of action are included within the broad

scope of § 541."  Goldstein v. Stahl (In re Goldstein), 526 B.R. 13, 21 (B.A.P. 9th

Cir. 2015).  "To determine when a cause of action accrues, and therefore whether it

accrued pre-bankruptcy and is an estate asset, the Court looks to state law."  Id.

(internal quotation marks omitted).  In Iowa, unjust enrichment claims, like

Debtor's, must be based on "evidence of specific contributions to the acquisition or

maintenance of the real estate" made at times established in the record.  Atkinson,

1999 WL 823564, at *1.

    Here, Debtor's restitution and compensation claims are based on her alleged

payments and labor directed to purchasing and improving the home.  Thus,

Debtor's claims arose when she made the specific alleged payments and performed

the specific alleged labor.  Debtor's argument that these claims did not arise until

Mr. Gonzales died is unpersuasive.  They arose when the contributions were made.

    While it appears that Debtor made most, if not all, of these contributions

before she filed bankruptcy, it is unclear on this record precisely when she made

the alleged payments and performed the alleged labor.  To the extent that Debtor

claims restitution and compensation for payments made and labor performed

before she filed bankruptcy (which appears to be the case), those claims became

property of the estate and were settled by Trustee as a part of the settlement with

22

the Gonzales Estate.  To the extent that Debtor can show any of the restitution and

compensation claims are for payments made and labor performed after she filed

bankruptcy, those claims are not property of the estate and remain with Debtor.

## II.    Res Judicata

The Gonzales Estate alternatively argues that the Court's order approving

the settlement already determined the issue of who owns Debtor's probate claims.

The Estate argues that Debtor had a full and fair opportunity to assert her

ownership interest in the claims at that time and did not do so.  The Gonzales

Estate concludes that res judicata now bars her from doing so.

Debtor argues that the settlement does not bind her because it was between

the Trustee and the Estate only.  Debtor also argues that the Court did not decide

what Debtor or Trustee owned, or when they owned it, before approving the

settlement.  Debtor argues that the Trustee rushed to convert unsubstantiated

allegations about unscheduled assets into a settlement without first identifying

what assets, if any, were actually unscheduled and belonged to the bankruptcy

estate.  Only a few weeks passed between the UST's motion to reopen and

Trustee's proposed settlement.  Debtor concludes that the settlement agreement

between the other two parties does not preclude her from asserting her continued

ownership of the probate claims.

"Res judicata bars a party from litigating claims that either were or could

have been raised in an earlier proceeding." In re Crooked Creek Corp., Bankr. No.

09-02352, 2017 WL 943907, at *3 (Bankr. N.D. Iowa Mar. 9, 2017) (internal

quotation marks omitted) (quoting In re Legassick, 534 B.R. 362, 366 (Bankr. N.D.

Iowa 2015)).  "Res judicata, or claim preclusion, applies against parties who

participated in prior proceedings and had a full and fair opportunity to litigate the

matter in the proceeding that is to be given preclusive effect." Du Trac Cmty.

Credit Union v. Hefel (In re Hefel), Bankr. No. 10-02787, Adv. No. 12-09016,

2012 WL 1853851, at *2 (Bankr. N.D. Iowa May 21, 2012) (internal quotation

marks omitted) (quoting Regions Bank v. J.R. Oil Co., LLC, 387 F.3d 721, 731

(8th Cir. 2004)).

The Eighth Circuit has said:

> The binding effect of a former adjudication, often generically termed
> res judicata, can take one of two forms.  Claim preclusion (traditionally
> termed res judicata or "merger and bar") bars relitigation of the same
> claim between parties or their privies where a final judgment has been
> rendered upon the merits by a court of competent jurisdiction.  Issue
> preclusion (or "collateral estoppel") applies to legal or factual issues
> actually and necessarily determined, with such a determination
> becoming conclusive in subsequent suits based on a different cause of
> action involving a party to the prior litigation.

Matter of Bottger, No. 14-01165-ALS7, 2015 WL 7825018, at *2 (Bankr. S.D.

Iowa Apr. 15, 2015)  (internal quotation marks omitted) (quoting W.A. Lang Co. v.

Anderberg–Lund Printing Co. (In re Anderberg–Lund Printing Co.), 109 F.3d

24

1343, 1346 (8th Cir. 1997)).  "The party invoking res judicata has the burden to

show that it applies."  <u>In re Crooked Creek Corp.</u>, 2017 WL 943907 at *3.

Here, the Gonzales Estate has not shown that claim preclusion or issue

preclusion bars Debtor from litigating her ownership of her probate claims.  Claim

preclusion does not apply because the settlement was between Trustee and the

Estate—and resolved only whatever interest the bankruptcy estate held.  Debtor

was not a party and Debtor's ownership of claims against the probate estate was

never adjudicated.  Thus, the Court's order approving the settlement was a final

determination of whatever the Chapter 7 Trustee had in the way of the probate

claims against the Gonzales Estate.  The settlement did not address or decide

Debtor's ownership of probate claims.  Claim preclusion does not apply.

Issue preclusion similarly does not apply because the issue that Debtor now

raises (that she, not Trustee, owns the probate claims) was not "actually and

necessarily determined" by the order approving the settlement.  The Iowa probate

court recognized this when it said: "The bankruptcy court approved the

compromise **but did not rule** on what claims it might include."  (Emphasis added).

As a result, the order approving settlement did not "actually and necessarily

determine" whether Debtor's probate claims were part of the estate.  Issue

preclusion does not apply.

### III.    Debtor's Exemption Claim and Trustee's Objection

Debtor's dower interest is deemed abandoned as of the close of the case.

Thus, it is no longer necessary to decide whether Debtor's dower interest can be

treated as exempt property.  The issue is moot and need not be decided.

Debtor's unjust enrichment claims, to the extent that they are based on

payments made and labor performed before she filed bankruptcy, became part of

the bankruptcy estate when she filed her petition in February 2015.  Debtor did not

list these claims on her petition.  Thus, under 11 U.S.C. § 554 these prepetition

unjust enrichment claims remained part of the bankruptcy estate after the case

closed.  See, e.g., Kartchner v. Harper (In re Harper), 557 B.R. 171, 174 (Bankr. D.

Ariz. 2016) ("Upon the Trustee's discovery of estate assets, which were never

administered, the Trustee is empowered to administer the assets which in this case

are comprised of the undisclosed Claims.").

Debtor amended her exemptions to include "Any and all matured or

unmatured claims to real estate, know or unknown, legal or equitable" as exempt.

Debtor argues that she did not list the restitution and compensation claims on her

schedules because they were too speculative.

Trustee objects to this exemption.  Trustee argues that the exemption is

untimely—the case closed in June 2015—and is barred by estoppel principles.

Trustee also argues that allowing the exemption would prejudice the Trustee

because she already sold this interest to the Gonzales Estate.  Trustee concludes

that there is now nothing to return to Debtor as exempt.

Bankruptcy Rule 1009(a) provides: "A voluntary petition, list, schedule, or

statement may be amended by the debtor as a matter of course at any time before

the case is closed."  Fed. R. Bankr. P. 1009(a).  "Amendments under Rule 1009 are

permitted before case closure unless there is evidence of bad faith by the debtor or

if creditors will suffer prejudice."  Bierbach v. Walck (In re Walck), 459 B.R. 208,

212 (Bankr. M.D. Pa. 2011).  "Prejudice also may arise if creditors would have

taken different actions, or asserted other positions, if the exemptions had been

claim[ed] earlier.  A late amendment also can be prejudicial if it impairs a trustee's

ability to administer the debtor's estate."  Id. (citing Kaelin v. Bassett (In re

Kaelin), 308 F.3d 885, 891 (8th Cir. 2002)).

This reasoning applies here.  Trustee has already sold Debtor's prepetition

restitution and compensation claims.  Debtor did not claim these as exempt until

after Trustee sold the claims and after litigation had begun in this Court about these

issues.  Had Debtor claimed the exemptions earlier, Trustee would certainly have

"taken different actions, or asserted other positions."  Allowing the exemption in

this case would prejudice Trustee.  Accordingly, the Court sustains Trustee's

objection to Debtor's exemption as to Debtor's prepetition restitution and

compensation claims.

27

## CONCLUSION

**WHEREFORE**, the Motion to Define Compromised Claim is DENIED IN PART as to Debtor's dower interest claim and restitution and compensation claims based on payments made and labor performed after she filed bankruptcy.

**FURTHER**, Debtor's dower interest claim is deemed abandoned as of the close of the case.

**FURTHER**, the Motion to Define Compromised Claim is GRANTED IN PART as to Debtor's restitution and compensation claims based on payments made and labor performed before she filed bankruptcy.

**FURTHER**, Trustee's Objection to Debtor's Claim of Exemptions is OVERRULED IN PART AS MOOT as to Debtor's dower interest claim.

**FURTHER**, Trustee's Objection to Debtor's Claim of Exemptions is SUSTAINED IN PART as to Debtor's remaining probate claims.

Dated and Entered:

February 14, 2018

THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE